1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICHAEL J. LESH,

                Plaintiff,

      v.

MICHAEL ASTRUE, Commissioner of
Social Security Administration,

                Defendant.

CASE NO.    **C07-5462RBL**

REPORT AND
RECOMMENDATION

Noted for May 30, 2008

This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by <u>Mathews, secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). This matter has been briefed, and after reviewing the record, the undersigned recommends that the Court reverse the Commissioner's decision and remand matter to the administration for an award of appropriate benefits.

<u>INTRODUCTION</u>

Plaintiff, Michael J. Lesh, was born in March 1971. He graduated from high school and worked as a deli clerk, janitor, and assembler (Tr. 289). He is a father of two children. He last attempted to work in January 2006, as a janitor, but was unable to perform all of the duties (Tr. 330-37, 1132-33).

In October 2001, Michael J. Lesh (Plaintiff) protectively filed concurrent applications for disability insurance benefits under Title II of the Social Security Act (Act), 42 U.S.C. §§ 401-34, and for Supplemental Security Income (SSI) disability benefits under Title XVI of the Act, 42 U.S.C. §§ 1381-83 (Tr. 209-11, 297, 1119-21). He alleges disability since December 3, 1999, due to major depression, psychotic tendencies, and various physical impairments (Tr. 280). After the Commissioner of Social Security (Commissioner) denied his applications initially and on reconsideration, Plaintiff requested a

1   hearing before an ALJ. (Tr. 127-30, 132-35, 1125-27).

2       On April 8, 2004, an ALJ held a hearing and took testimony from three witnesses: Plaintiff,

3   represented by an attorney; Kenneth N. Asher, Ph.D., a medical expert; and a vocational expert (Tr.

4   31-76).  On July 24, 2004, the ALJ issued a decision finding Plaintiff not disabled as defined in the Act

5   because he could perform his past relevant work as a janitor.  (Tr. 77-95).  On September 23, 2005, the

6   Appeals Council denied Plaintiff's request for review of the ALJ's decision  (Tr. 173-75).

7       On November 3, 2005, Plaintiff filed his first complaint with this Court.  *See* C05-5723RJB.  On

8   March 22, 2006, the Honorable Robert J. Bryan issued an order, based on a stipulated motion,  remanding

9   the case for further administrative proceedings (Tr. 98-99).  Based on conceded errors in the ALJ's

10  decision, the Court directed the administrative law judge to do the following:

11          • hold a de novo hearing;

12          • obtain updated records from Plaintiff's treating sources;

13          • re-evaluate the opinions of Dan Neims, Psy.D.;

14          • re-evaluate Plaintiff's mental impairment, including anger management;

15          • re-evaluate Plaintiff's subjective complaints, including regarding his physical limitations;

16          • consider all lay evidence of record;

17          • reconsider findings in the sequential evaluation process given the re-evaluated evidence

18  discussed above, including whether Plaintiff can perform the physical and mental requirements of his past

19  relevant work or other work; and

20          • obtain supplemental testimony from medical and vocational experts if warranted.

21       On November 1, 2006, the Appeals Council remanded the case for another ALJ hearing consistent

22  with the Court's order (Tr. 108-10).  On April 30, 2007, the ALJ held a second hearing and took

23  testimony from four witnesses: Plaintiff, Dr. Johnson, a psychiatrist; Dr. Smith, an orthopedic surgeon;

24  and a vocational expert (Tr. 1129-57).  On June 29, 2007, the ALJ issued a decision finding Plaintiff not

25  disabled because he could work as an addresser, laundry folder, or office helper (Tr. 8-24).  After the

26  Appeals Council declined review of the ALJ's decision, his decision became the Commissioner's final

27  determination.

28       On September 14, 2007,  Plaintiff filed his Complaint with the Court challenging the

REPORT AND RECOMMENDATION
Page - 2

1   administration's second denial of his applications for benefits.  In his Complaint, Plaintiff argues many of

2   the same errors previously raised with the court.  He contends: (1) the ALJ improperly rejected several

3   medical opinions; (2) the ALJ's credibility finding is erroneous; (3) the ALJ improperly evaluated the lay

4   testimony; and (4) the ALJ improperly found that jobs exist in significant number in the national economy

5   that Plaintiff could perform.  Defendant counter-argues that the ALJ applied the proper legal standards

6   and that the administrative findings and conclusions were properly supported by substantial evidence.

7         After reviewing the record, the undersigned finds the ALJ failed to properly considered the

8   medical evidence, and therefore, the matter should be remanded to the administration to reconsider the

9   medical evidence.  In addition, because of the failure to properly consider the medical evidence, the

10  administration should also reconsider Plaintiff's testimony, lay evidence, and the vocational evidence and

11  findings.

12                                    DISCUSSION

13        This court must uphold the determination that plaintiff is not disabled if the ALJ applied the

14  proper legal standard and there is substantial evidence in the record as a whole to support the decision.

15  Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is such relevant evidence

16  as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S.

17  389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less

18  than a preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v.

19  Sullivan, 772 F. Supp. 522, 525 (E.D. Wash. 1991).  If the evidence admits of more than one rational

20  interpretation, the Court must uphold the Secretary's decision.  Allen v. Heckler, 749 F.2d 577, 579 (9th

21  Cir. 1984).

22        The ALJ is entitled to resolve conflicts in the medical evidence.  Sprague v. Bowen, 812 F.2d

23  1226, 1230 (9th Cir. 1987).  He may not, however, substitute his own opinion for that of qualified medical

24  experts.  Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982).  If a treating doctor's opinion is

25  contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific

26  and legitimate reasons" supported by substantial evidence in the record for doing so.  Murray v. Heckler,

27  722 F.2d 499, 502 (9th Cir. 1983). " The opinion of a nonexamining physician cannot by itself constitute

28  substantial evidence that justifies the rejection of the opinion of either an examining physician or a

1  treating physician." <u>Lester v. Chater</u>, 81 F.3d 821, 831 (9th Cir. 1996).  In <u>Magallanes v. Bowen</u>, 881

2  F.2d 747, 751-55 (9th Cir. 1989), the Ninth Circuit upheld the ALJ's rejection of  a treating physician's

3  opinion because the ALJ relied not only on a nonexamining physician's testimony, but in addition, the

4  ALJ relied on laboratory test results, contrary reports from examining physicians and on testimony from

5  the claimant that conflicted with the treating physician's opinion.

6  　　　Here, Plaintiff contends the ALJ improperly evaluated the opinions and reports provided by Dr.

7  Bruce, Ms. Bunn (a nurse practitioner), Ms. Clarke (a therapist), Dr. Neims, Dr. Kent, Dr. Chalstrom, Dr.

8  Asher, Dr. Johnson, and Dr. Rusher.   The undersigned, after carefully reviewing these medical opinions,

9  and the ALJ's most recent decision, finds the ALJ improperly evaluated the evidence.

10  　　　The ALJ placed "some weight" on Dr. Rusher's opinion, "great weight" on the opinion of Dr.

11  Chalstrom, "some weight" to Dr. Tsai, "some weight" to Dr. Neims, and found the medical expert, Dr.

12  Johnson's opinion "fairly reasonable, but a bit too restrictive" (Tr. 19-20).

13  　　　Dr. Neims, a psychologist, examined and evaluated Plaintiff nine times over an eight-year period:

14  in February 1999, April 2000, March 14, 2001, June 2002, December 2003, November 2004, September

15  2005, August 2006, and June 2007.   He conducted clinical interviews, extensive psychological testing,

16  and mental status examinations (Tr. 476).  Dr. Neims consistently identified marked to severe limitations

17  in Plaintiff's ability to interact appropriately with public contacts; moderate to severe limitations in his

18  ability to exercise judgment and make decisions; marked to severe limitations in his ability to relate

19  appropriately to co-workers and supervisors; marked to severe limitations in his ability to respond

20  appropriately to the pressures and expectations of a normal work setting; moderate to severe limitations in

21  his ability to control physical or motor movements and maintain appropriate behavior; moderate to

22  marked limitations in his ability to care for himself, including personal hygiene and appearance, and

23  moderate to severe limitations in ability to perform routine tasks, and moderate limitations in his ability to

24  　learn new tasks (Tr. 630-41, 856, 898-906, 914-21, 952-59, 1110-18).

25  　　　Despite stating he was giving Dr. Neims "some weight", the ALJ rejected nearly all of Dr. Neims'

26  assigned limitations.  The ALJ explained:

27  　　　　The claimant has a long history of psychiatric therapy with multiple psychiatric
　　　　examinations.  He has had serial DSHS evaluations, but no treatment, from Dr. Neims
28  　　　　(exhibits 2F; 3F; 14 F; 15F; 16F; 33F; 45F), who sees him as disabled with a GAF of 48.
　　　　However, a variety of other evaluators and  therapy sources discussed in the decision say

that he is not so limited . The distinction from the norm in this case is that Dr. Neims' evaluations do not stand alone. Although he described a plethora of symptoms and presented with some psychomotor retardation, his mental status presentation was not too bad otherwise (exhibits 2F:3, 3F:5, 33F:4-5; 45F). There is a wealth of treatment notes and other evaluations, such as from Dr. Davenport (exhibit 26F) and Dr. Chalstrom (exhibit 38F) to fill in the claimant's symptomatology and functioning. He has generally appeared mentally intact at Dr. Fleischman's examinations. Dr. Neims' reports are not entirely convincing.

(Tr. 21). Rejecting Dr. Neims' reports and filling in "symptomatology and functioning" , the ALJ has

impermissibly become his own medical expert in this case.

Several medical opinions support Dr. Neims' limitations. For instance, Dr. Kent, performed a

consultative exam in December 2003, and she opined that Plaintiff had chronic coping problems resulting

in marked limitations in his ability to make judgements on simple work-related decisions, and moderate

limitations in his ability to carry out detailed instructions, interact appropriately with the public,

supervisors, and co-workers, respond appropriately to work pressures in a usual work setting, and respond

appropriately to changes in a routine work setting. She thought his workday and workweek would be

interfered with by his fear of demons, suicidal ideation, conflictual relationships, and chronic depression,

and that he might require support to maintain a job (Tr. 797-804). Dr. Kent explained that personality

disorders were chronic, long lasting and generally resistant to treatment. She thought DBT would be an

excellent intervention, but noted that it took a long time to work. She thought Plaintiff could still have

chronic suicidal ideation after a year of treatment and would likely always have difficulty in his

relationships. The ALJ provided no compelling reasons for rejecting this opinion.

In contrast to the ALJ's reliance on Dr. Chalstrom to discredit Dr. Neims, on January 27, 2007,

Dr. Chalstom, who is also a psychologist, opined that Plaintiff had major problems in the areas of

attention and concentration, based on psychological testing; could understand, remember and carry out no

more than simple instructions; and would have difficulty in most work situations because of his

irritability and difficulty relating to other people (Tr. 884-85). He thought Plaintiff' prognosis was

guarded because of his personality disorder (Tr. 889). The ALJ did not include these limitations which are

consistent with Dr. Neims' evaluations.  Moreover, Dr. Chalstrom did not find malingering to effect or

discredit Plaintiff's personality disorder, but the ALJ nonetheless interpreted exaggeration on Dr.

Chalstrom's MMPI-2 testing (Tr. 888) to indicate that Plaintiff was malingering (Tr. 19).

The court also notes the ALJ rejected the opinions of the two psychiatric experts called to testify

1   at the administrative level, whose opinions were consistent with Dr. Neims limitations and observations.

2   Dr, Asher, testified at the first administrative hearing, and he opined Plaintiff was moderately impaired in

3   his ability to perform activities of daily living; and moderately to markedly (leaning toward markedly)

4   impaired in social functioning (Tr. 67-68).  Dr. Asher thought Plaintiff's mental impairments were only

5   partly controlled by medication and that he had a residual disease process that resulted in such marginal

6   adjustment that even a minimal increase in mental demands or a change in environment would be

7   predicted to cause him to decompensate. Dr. Asher testified that Plaintiff was at risk for serious problems

8   if he did not have the support of his mother; if additional pressures were placed on him; or if more were

9   expected of him on a persistent basis (Tr. 68). He explained that Plaintiff's primary disorder, the

10  personality disorder, is extremely difficult to treat, and that community mental health centers are severely

11  limited in what they can provide (Tr. 69-70). The ALJ did not address this opinion in his recent decision.

12      At the most recent hearing, the ALJ called a different medical expert, Dr. Johnson.  Dr. Johnson

13  agreed that Plaintiff's personality disorder was his primary disorder and opined that it, along with

14  Plaintiff's depressive disorder, caused marked limitations in social functioning and moderate limitations

15  of concentration, persistence or pace (Tr. 1146-50). As noted above, the ALJ found Dr. Johnson's opinion

16  "fairly reasonable" overall, but rejected his opinion that Plaintiff had a marked limitation in social

17  functioning (Tr. 20). The ALJ claimed that Plaintiff had some difficulty controlling his anger when not

18  compliant with medications, but his interaction with others was no more than moderately impaired (Tr.

19  20).

20      In sum, the ALJ failed to properly evaluate the medical evidence of record.  The ALJ improperly

21  rejected Dr. Neims' opinion, without providing legitimate reasons for doing so.  The ALJ improperly

22  rejected or failed to include all the limitations assigned by the doctors on whom he relied on the most, i.e.,

23  Dr. Chalstrom and Dr. Johnson.

24      The undersigned also finds the ALJ erred when he discredited Plaintiff's testimony and the lay

25  testimony of Plaintiff's mother, Nita Lesh.  The ALJ rejected the testimony based, in whole or in part, on

26  the argument that their allegations and statements of disablty were  inconsistent with the medical

27  evidence (Tr. 15-21).  Because the undersigned finds the ALJ failed to properly evaluate the medical

28  evidence, as discussed above, the ALJ's credibility analysis is also necessarily flawed.   Similarly, the

1  ALJ based his residual functional capacity and step-five findings on a flawed analysis of the medical

2  evidence, and therefore the ALJ failed to meet the burden of showing that Plaintiff retains the ability to

3  perform other work in the national economy.

4      The decision whether to remand a case for further proceedings or simply to award benefits is

5  within the discretion of the court.  Harman v. Apfel, 211 F.3d 1172, 1176-1178 (9th Cir. 2000).  An

6  award of benefits is appropriate when no useful purpose would be served by further administrative

7  proceedings, or when the record has been fully developed and there is not sufficient evidence to support

8  the ALJ's conclusion.  Rodriguez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1989). Remand is appropriate

9  where additional administrative proceedings could remedy defects. Id.; Bilby v. Schweiker, 762 F.2d 716,

10  719 (9th Cir. 1985) (citing Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984)). Where remand would

11  only delay the receipt of benefits, judgment for the claimant is appropriate.  Rodriguez, 876 F.2d at 763.

12      This matter is before the court for the second time, based generally on the same errors previously

13  conceded.  At the hearing the vocational expert, Michael Weiss, was basically asked to assume Plaintiff

14  had the "marked" limitations assigned by Dr. Neims, Dr. Chalstrom, Dr. Asher, and Dr. Johnson.  (Tr. 72-

15  76).  Mr. Weiss was asked to consider marked limitations in his ability to make judgments on a simple

16  work related decision (if Plaintiff was unable to maintain pace requirement for a quarter of the day),

17  marked limitations in his ability to relate appropriately to co-workers and supervisors,  and/or the inability

18  to appear at work three times a month due to depression.  Mr. Weiss testified that such a person would not

19  be able to maintain competitive employment, and the ALJ agreed.

20      Given the history of this matter,  the medical opinions which support greater limitations than those

21  assigned by the ALJ, and the vocational expert's testimony at the most recent administrative hearing, the

22  undersigned finds no reason to remand the matter for further proceedings.

23                                CONCLUSION

24      Based on the foregoing discussion, the court finds the ALJ erred in assessing plaintiff's

25  application for disability benefits.  The court further finds that there is no reasonable need for the matter

26  to be remanded to the administration for further consideration.  The Court should set aside and REVERSE

27  the commissioner's decision and REMAND the case to the administration with directions to award

28  appropriate disability benefits.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **May 30, 2008**, as noted in the caption.

DATED this 5th day of May, 2008.

*/s/ J. Kelley Arnold*
J. Kelley Arnold
U.S. Magistrate Judge

REPORT AND RECOMMENDATION
Page - 8